## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHAMSIDDIN A. ABDUR-RAHEEM,

    Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

Civil Action No. 15-1743 (MAS)

**MEMORANDUM OPINION**

### SHIPP, District Judge

Pro se Plaintiff Shamsiddin A. Abdur-Raheem, confined at New Jersey State Prison in Trenton, New Jersey, filed the instant Complaint pursuant to 28 U.S.C. § 1983, alleging various violations of his constitutional rights. Presently before the Court is Plaintiff's Motion for Reconsideration ("Motion") (ECF No. 62), challenging the Court's March 20, 2017 order granting in part, and denying in part, Defendants' motion to dismiss (ECF No. 24). (Order, Mar. 20, 2017, ECF No. 60.) For reasons stated below, the Court denies Plaintiff's Motion.

### I. STANDARD OF REVIEW

A motion for reconsideration is governed in this District by Local Civil Rule 7.1(i). *Treusch v. Ctr. Square Supermarket, LLC*, No. 11-4874, 2013 WL 1405031, at *3 (D.N.J. Apr. 5, 2013). Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it believes the Court overlooked when rendering its initial decision. L. Civ. R. 7.1(i). To prevail on a motion for reconsideration, the movant must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . .

[rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014); *see also Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 515 (D.N.J. 2014). To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered." *Mitchell v. Twp. of Willingboro Municipality Gov't*, 913 F. Supp. 2d 62, 77-78 (D.N.J. 2012) (quotation and citation omitted). The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly. *Id.* at 78.

## II. DISCUSSION

Plaintiff does not point to an intervening change in the controlling law since the Court's previous decision, nor does Plaintiff rely on any new evidence that was not available when the Court issued its previous decision. As such, the Court analyzes Plaintiff's arguments solely under the third prong described above, "the need to correct a clear error of law or fact or to prevent manifest injustice." *Schumann*, 769 F.3d at 848-49.

Plaintiff's Motion raises five grounds for reconsideration: (1) the Court erred in dismissing his property claim on the ground that he had an adequate post-deprivation remedy under state law; (2) the Court erred in dismissing his conditions of confinement claims while in segregated confinement by misapplying applicable precedent; (3) the Court overlooked his right to petition the government claim; (4) the Court erred by dismissing his November 8, 2012 assault claims as time-barred because the Court erroneously rejected Plaintiff's equitable tolling argument; and (5) the Court erred in dismissing Plaintiff's state law tort claims for his failure to file a notice of claim as required by state law. The Court will examine each alleged error, in turn.

2

A.  **Property Claim**

In the previous opinion, the Court dismissed Plaintiff's property claim because it found that adequate and meaningful post-deprivation remedies existed in state court. (Op. 33, Mar. 20, 2017, ECF No. 59) ("Prior Opinion"). Plaintiff does not dispute this finding, but asserts that the dismissal was improper because he had already availed himself of an existing remedy, which was ineffective. As Plaintiff concedes, however, he availed himself of the administrative remedy created by state law, which served as an alternative to the state court remedies. (Pl.'s Br. 3, ECF No. 62-2.) Even accepting Plaintiff's assertions as true, Plaintiff does not explain why he could not have pursued his property claim in state court once the administrative remedy proved ineffective. As cited in the Prior Opinion, the Third Circuit explained that:

> [a plaintiff] cannot prevail on his due process claim if the state's post-deprivation procedures, including state tort remedies, are adequate. [The plaintiff] has failed to explain why New Jersey's state procedures to recover wrongfully seized property, such as the ability to move in the criminal action for return of his property or the ability to file a separate action for a writ of replevin, are insufficient.

*Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 139 (3d Cir. 2010).

Plaintiff seems to conflate the Court's dismissal based on the existence of adequate post-deprivation remedies with the law on exhaustion. In this instance, regardless of whether Plaintiff exhausted state court remedies, the Court would have dismissed the claim. As the Third Circuit has plainly held, the existence of adequate post-deprivation remedies in New Jersey precludes Plaintiff's due process claim regarding the deprivation of property. Unless and until Plaintiff can establish that *all* remedies under state law are either inadequate or not meaningful, there is no federal claim. As such, relief on this ground is denied.

B. **Segregated Confinement Claim**

In the Prior Opinion, the Court dismissed this claim on the basis that it essentially challenges the fact of Plaintiff's placement in segregated confinement, and is not based upon any independent constitutional deprivations while in segregation. As the Court explained:

> Plaintiff makes no allegation that his IPC confinement was more restrictive or more severe than other inmates in segregation—indeed, Plaintiff alleges that, while in IPC, he was provided with meals, visits with friends and family (albeit only non-contact, window visits), and recreational activities. Rather, Plaintiff bases his claims solely on the allegation that he was not allowed to congregate with other inmates in a variety of activities. That is, of course, the very definition of segregated or solitary confinement.

Prior Op. 21 (citations omitted). Plaintiff does not dispute this finding, but asserts that the Court misapplied the law. Plaintiff cites to *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court case the Court relied on, for the proposition that the Court must compare Plaintiff's conditions of confinement while in segregation to the conditions of confinement of the general population. As the Supreme Court found, however, "[a plaintiff's] discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. As such, even if the Court accepts Plaintiff's theory, Plaintiff must allege facts to show that his conditions of confinement differed from those of other inmates and were not the natural consequences of segregated confinement. As the Court found in the Prior Opinion, Plaintiff did not meet this requirement because many of Plaintiff's allegations concern his inability to congregate. Plaintiff's allegations are not sufficient because segregation necessarily implies the lack of congregation. Moreover, Plaintiff fails to establish that his conditions of confinement differed from that of any other inmate, either inside or outside of segregation. Indeed, at least one circuit court has suggested that the threshold to establish a segregated confinement claim under the Fourteenth Amendment essentially mirrors that of an Eighth Amendment

4

conditions of confinement claim available to all prisoners. *See Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) ("[S]ubject only to the Eighth Amendment, a state can confine a prisoner as closely as it wants, in solitary confinement if it wants; a prisoner has no natural liberty to mingle with the general prison population[.]" (internal quotation and citation omitted)).

Plaintiff also argues that the Court failed to consider a state-created interest argument, but Plaintiff only points to state regulations that define the procedures under which he may be placed into segregation. (Pl.'s Br. 10.) *Sandin* addressed this very argument, stating that:

> By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, [it] encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. . . . Such a conclusion may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public. It is a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison. Not only are such regulations not designed to confer rights on inmates, but the result of the negative implication jurisprudence is not to require the prison officials to follow the negative implication drawn from the regulation, but is instead to attach procedural protections that may be of quite a different nature.

515 U.S. at 481-82. Indeed, in *Sandin*, the Supreme Court reversed the Ninth Circuit's finding that regulations similar to the ones cited by Plaintiff implicate a "state-created liberty interest" that prohibited the state from "impos[ing] segregation if it does not find substantial evidence of misconduct." *Id.* at 477. Thus, it is not enough that procedural protections may have existed to govern Plaintiff's placement into segregation—Plaintiff must also establish that the nature of his segregated confinement itself implicated a liberty interest. He has not done so here.

Plaintiff further relies on *Wells v. Nelson*, a recently dismissed matter in this District with which the Court is familiar, for the proposition that the sheer length of placement in segregation may by itself, in some circumstances, state a constitutional violation. No. 13-6024, 2014 WL

5

5148806 (D.N.J. Oct. 14, 2014). The Court, however, recognized the *Wells* decision in its Prior Opinion but found that Plaintiff's two-year placement in segregation did not rise to a constitutional violation. (*See* Prior Op. 21-22.) As Plaintiff concedes, *Wells* deals with a plaintiff who was in segregated confinement for *ten years*. 2014 WL 5148806, at *1. Furthermore, *Wells* also highlighted some of the restrictive conditions of that plaintiff's solitary confinement, which Plaintiff does not allege in his current Complaint. *Id.* at *2. Plaintiff argues that his segregated confinement is "in the <u>exact</u> IPC placement, in the <u>exact</u> same prison, and for substantially the <u>exact</u> same reasons Plaintiff instantly complains of" as the plaintiff in *Wells*. (Pl.'s Br. 5.) As the Court stated above, the allegations in Plaintiff's Complaint do not support this assertion.

Plaintiff additionally argues that the two-year finding was in error because the Court failed to take into account Plaintiff's continued placement in segregation since the filing of the Complaint. At no point since filing the Complaint on March 10, 2015, however, did Plaintiff move to amend the Complaint to highlight this fact. The Court is not obligated "to accept assertions in a brief without support in the pleadings." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015) (citation omitted). Accordingly, the Court denies relief on this ground. To the extent that Plaintiff wishes to amend his Complaint with regard to the segregated confinement claim, Plaintiff must follow the proper procedures. *See* Fed. R. Civ. P. 15.[1]

---

[1] The Court notes that Plaintiff's assertion that his segregated confinement has been continuous and ongoing for the past five years, similar to the plaintiff in *Wells*, is at odds with allegations in the Complaint. Indeed, the Complaint contains several references to shorter periods of detention for multiple infractions, (*see* Compl. 25, 36 & 38), and Plaintiff's own argument for equitable tolling on his assault claims, *infra*, would seem to indicate that he has not been in segregated confinement continuously. Nevertheless, the Court will address such allegations if and when they are properly raised.

6

C. **Right to Petition the Government Claim**

In the Prior Opinion, the Court dismissed Plaintiff's denial of access to the courts claim, finding that his allegations regarding the lack of law library access and the provision of "incompetent" paralegals did not state a denial of access to the courts claim. (Prior Op. 31.) Plaintiff argues that the Court failed to recognize that Plaintiff also asserted a right to petition the government claim. Plaintiff does not challenge the Court's finding but takes issue with the Court's construction of this claim based on his allegations. Plaintiff requests the Court to separate a denial of access to the courts claim from a right to petition the government claim. The Court is not inclined to adopt Plaintiff's construction because the claims are intertwined. *See Crocamo v. Hudson Cty. Corr. Ctr.*, No. 06-1441, 2006 WL 1307665, at *5 (D.N.J. May 8, 2006) (stating that "[t]he constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.")

Plaintiff additionally argues that the Court's dismissal of his November 8, 2012 assault claims as time-barred conclusively establishes his denial of access to the courts claim, as he has now lost a legal claim based on the alleged lack of access. Plaintiff's argument is an after-the-fact characterization. Plaintiff is required to *plead* in the Complaint that he *lost* a legal claim, which he could not have done since the loss did not occur until after the Complaint was filed. Indeed, as set forth below, Plaintiff contends that the untimeliness finding was itself in error, so he does not

concede that he has lost a claim.[2] The Court did not err in finding that the current Complaint fails to state a claim. Accordingly, relief is denied on this ground.[3]

### D. November 8, 2012 Assault Claims

In the Prior Opinion, the Court found that Plaintiff's claims based upon the November 8, 2012 assault were time-barred. (Prior Op. 12-14.) The Court also rejected Plaintiff's equitable tolling argument that he was placed into detention two months prior to the expiration of the statute of limitations as insufficient to excuse his untimely filing. (*Id.*) Plaintiff argues that this finding was in error, but his entire argument is premised upon Plaintiff's disagreement with the Court's reliance on *Lyons v. Emerick*, 187 F. App'x 219, 222 (3d Cir. 2006), for the proposition that "[w]aiting until the last minute to file a complaint, and then alleging that a short delay caused by prison officials resulted in a late filing, does not justify equitable tolling[.]" (Prior Op. 13). (*See* Pl.'s Br. 20 ("[I]t is an overstatement where the Court describes the [two] months remaining for Plaintiff to file his assault claims in which Defendants stymied his effort as, 'waiting until the last minute[.]'").) Disagreement with a court's holding is not a valid ground for reconsideration. *Piemonte v. Viking Range, LLC*, No. 14-0124, 2015 WL 5666148, at *2 (D.N.J. Sept. 25, 2015). Therefore, relief on this ground is denied.

---

[2] Plaintiff attempts to elude this pleading requirement by arguing that he pled the "possibility" of such an outcome. (Pl.'s Br. 13.) Possibility of injury is not actual injury. *See Thrower v. Fraser*, No. 10-5062, 2011 WL 6072115, at *9 (D.N.J. Dec. 6, 2011).

[3] Plaintiff attempts to link his denial of access to the courts allegations to his other claims, arguing that the Court erred in dismissing those claims by only considering the allegations regarding the lack of access. As was clear from the Prior Opinion, however, the Court dismissed those claims for other reasons and limited its consideration of Plaintiff's lack of access allegations to the denial of access to the courts claim only.

8

### E. State-Law Tort Claims

In the Prior Opinion, the Court dismissed Plaintiff's state-law tort claims against governmental officials and entities for his failure to file a notice of tort claim as required by state law. (*See* Prior Op. 15.) Plaintiff asserts that this finding was in error because N.J.S.A. § 59:3-14, which states that "[n]othing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct[,]" alleviated his burden of providing a notice of claim. The New Jersey Supreme Court has already addressed this argument based on § 59:3-14 by finding that "the notice requirements of the Act . . . apply even where the alleged tort is entirely due to actual fraud, actual malice, willful misconduct or an intentional wrong." *Velez v. City of Jersey City*, 180 N.J. 284, 292 (2004) (quoting the lower court's finding with approval).

Plaintiff further argues that the dismissal was in error because the Court failed to account for his demand for injunctive relief, which is not barred by the failure to file a notice of claim. The Court also addressed this argument, stating "[a] review of the Complaint shows that Plaintiff seeks no injunctive relief . . . related to his state law tort claims—there is no request for relief to enjoin Defendants from any ongoing torts or, for that matter, any allegations that the alleged torts are ongoing to begin with." (Prior Op. 18-19.) In his brief, Plaintiff relies on the same "ongoing violation" argument as he does with respect to his segregated confinement claim, (*see* Pl.'s Br. 26), but as the Court stated above, there was no way for the Court to possess this knowledge. If Plaintiff has additional allegations that he wishes to assert which would establish that tortious conduct by Defendants *actually caused* him to be *currently detained* in segregated confinement, and he seeks *only* injunctive relief to remedy such confinement, the Court will consider those

9

allegations after Plaintiff has properly amended the Complaint. Until then, relief is denied on this ground.

### F.  OPRA Claim

Finally, the Court addresses a separate argument raised in Ground Five of the Motion, namely that the Court erred in declining supplemental jurisdiction over Plaintiff's OPRA claim. In the Prior Opinion, the Court found that the exercise of supplemental jurisdiction would be improper because Plaintiff's ORPA claim was not related to the other claims in the Complaint. (Prior Op. 38.) Plaintiff argues that this was erroneous because Plaintiff alleges that Defendant Falvey, the record custodian, conspired with other defendants when he denied Plaintiff's OPRA request. (Pl.'s Br. 24.) The Complaint, however, makes no such conspiracy allegations. (*See* Compl. 43.) Furthermore, even if the Complaint contained such allegations, there are no factual allegations to show that Plaintiff's conspiracy claim is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that courts are free to ignore factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me"). Thus, the Court denies relief on this ground.

## III.  CONCLUSION

For the reasons set forth above, the Motion is DENIED.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: November 6, 2017