**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHAMSIDDIN A. ABDUR-RAHEEM,

Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, et al.,

Defendants.

Civil Action No. 15-1743 (MAS) (TJB)

**OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants'[1] motion for summary judgment. (ECF No. 180.) Also before the Court is Plaintiff's tardy motion for leave to file his opposition to the motion as within time. (ECF No. 185.) As this Court has considered Plaintiff's opposition in reaching its decision, Plaintiff's motion is granted. For the following reasons, Defendants' motion is granted in part and denied in part. Judgment shall be entered in favor of the moving Defendants as to all but Plaintiff's Due Process claims related to his 2015 disciplinary proceeding.

**I.     BACKGROUND**

Plaintiff is a convicted state prisoner currently confined in New Jersey State Prison. (See ECF No. 87 at 4.) In his operative amended complaint, Plaintiff sought to raise various claims related to his imprisonment, most of which this Court dismissed following a motion to dismiss.

---

[1] In referring to Defendants in this Opinion, this Court refers generally to the moving Defendants – Defendants Lanigan, D'Ilio, Campos, Robinson, Kilpatrick, Forbes, and Falvey. (See ECF No. 180 at 1.) There remain a number of other unserved or fictitious Defendants in this matter who have yet to be formally dismissed who are not parties to Defendants' motion.

(*See* ECF Nos. 104-05.) Following the Court's decision on the motion to dismiss, only the following claims remained in this matter: an eighth amendment conditions of confinement claim related to the use of "ping pong" toilets in a cell in which Plaintiff had been housed; a first amendment retaliation claim related to alleged fabricated disciplinary charges; two due process claims related to two separate prison disciplinary charges of which Plaintiff was found guilty; a first amendment claim related to a prison telephone policy; and state law claims for negligence, gross negligence, and intentional infliction of emotional distress. (*See* ECF No. 104.) The parties thereafter settled and resolved Plaintiff's claim related to the telephone policy, and Plaintiff during his deposition agreed that he was no longer pursuing that claim before this Court.[2] (*See* ECF No. 180-6 at 13; ECF No. 103.)

During his deposition, Plaintiff provided the following description of his toilet-related conditions of confinement claim. According to Plaintiff, due to the nature of the shared plumbing between adjoining cells, his cell's toilet was connected to that of his neighbor, and, when one cell flushes its toilet, some of the waste "creeps [into] the toilets" in the neighboring cell. (ECF No. 180-6 at 14.) The waste did not, as a general rule, leak into the adjoining cell, only into the bowl of the adjoining cell's toilet. (*Id.*) Inmates would have to flush both toilets together, or use excess water to flush all of the remaining waste into the drain. (*Id.*) Plaintiff asserted that on several occasions this led to him coming into contact with splashes of the adjoining cell's waste while using his own toilet. (*Id.*) The toilet system otherwise only caused Plaintiff discomfort insomuch as he had to see or smell the waste which flowed into his toilet bowl. (*Id.* at 15.) In response to institutional complaints, Plaintiff was told that his complaints about the cell toilets would be referred to maintenance so that maintenance could ensure that the plumbing would drain properly.

---

[2] As the cell phone policy claim was resolved between the parties, that claim is dismissed to the extent it technically remains pending before this Court.

(*Id.* at 29.) Plaintiff asserted during his deposition that his state law claims of negligence, gross negligence, and intentional infliction of emotional distress likewise arose out of what he viewed as the prison's inadequate response to the toilet issue and his other complaints. (*Id.* at 18-21.)

During his deposition, Plaintiff also discussed his Due Process claims. Plaintiff's first claim relates to disciplinary charges arising out of the April 16, 2014, confiscation of a courtroom diagram Plaintiff had prepared for himself related to his criminal proceedings. (*Id.* at 31.) This disciplinary charge was eventually converted to an on-the-spot charge, resulting in Plaintiff receiving only the confiscation of the document, which was considered contraband, and a verbal reprimand. (*Id.*) Plaintiff believes these charges were handled improperly, however, because he did not receive a hearing or further process relating to this charge. (*Id.* at 31-32.)

Plaintiff also alleges that Defendant Forbes planted drugs in his cell, but Plaintiff did not witness this alleged occurrence and did not know anyone who did. (*Id.* at 24; 40.) This contention forms the basis of Plaintiff's retaliation claim, although Plaintiff did not elaborate on how or why this alleged planting of drugs or other disciplinary action was retaliatory in nature during his deposition. (*Id.* at 24; 35-36.) Plaintiff's second set of Due Process claims, however, relates to the hearings he received as to these charges, which Plaintiff contends were improperly held in 2015, several months after the evidence was available. Plaintiff further contends that he did not receive all the evidence before his hearing and was denied some process, including a polygraph. (*Id.* at 25-26; *see also* ECF No. 87 at 23-25.)

II.   **LEGAL STANDARD**

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and

3

admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment, a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine [dispute] for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> A nonmoving party has created a genuine [dispute] of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine [dispute] as to a material fact for trial.

*Serodio*, 27 F. Supp. 3d at 550.

### III.    DISCUSSION

####    A.    Plaintiff's April 2014 Due Process Claim

In their motion, Defendants contend that they are entitled to summary judgment as to Plaintiff's Due Process claim related to the April 2014 disciplinary charge.[3] This claim arises out of the April 2014 confiscation of a courthouse diagram possessed by Plaintiff that was seized as contraband. Defendants argue that Plaintiff's liberty interests were not sufficiently impugned to support a Due Process claim.

The right to Due Process in relation to a prison disciplinary proceeding is "triggered by deprivation of a legally cognizable liberty interest . . . [which] occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 474 (1995)). Thus, Due Process protections generally only attach to disciplinary proceedings where the sanction includes either the loss of commutation credits to which the prisoner has an attached interest or where the imposed sanction includes a lengthy period of detention in highly restrictive conditions beyond those applicable to prisoners generally. *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974); *Monroe v. Bryan*, 487 F. App'x 19, 21 (3d Cir. 2012). As Plaintiff was ultimately charged with only an on-the-spot infraction, he was sanctioned only with the confiscation of the diagram and a verbal reprimand. (*See* ECF No. 180-3 at 6-7.) As Plaintiff received only a warning and did not lose any earned credits or suffer any

---

[3] Plaintiff raises at least some of his civil rights claims under both 42 U.S.C. § 1983, the federal civil rights statute, and the New Jersey Civil Rights Act ("NJCRA"). The NJCRA is New Jersey's analogue to a federal civil rights claim under § 1983 and, with rare exceptions not applicable here, claims under the NJCRA are construed identically to an equivalent federal claim and are subject to the same defenses. *See, e.g.*, *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). As such, the Court's reasoning in this Opinion applies equally to both Plaintiff's federal civil rights claims and any NJCRA claims Plaintiff may still have following this Court's decision on Defendants' motion to dismiss.

severe hardship beyond the everyday incidents of prison life, he did not have a viable liberty interest in the outcome of this charge sufficient to establish a right to Due Process.[4] Defendants are therefore entitled to summary judgment as to Plaintiff's claim related to the April 2014 disciplinary charges.

    **B.**     **Plaintiff's CDS-Charge-Related Due Process Claim and Underlying Retaliation Claim**

Plaintiff's amended complaint also includes a Due Process claim asserting that he was denied procedural protections in relation to his 2015 disciplinary hearing regarding his August 2014 possession of a controlled substance charge. Defendants do not directly address this claim in their moving brief, but tangentially argue that Plaintiff's retaliation claim, which asserts that the drugs underlying the charge were planted in retaliation for other complaints, is *Heck* barred as it would impugn the outcome of the 2015 hearing that deprived Plaintiff of commutation credits. *See Heck v. Humphries*, 512 U.S. 477, 486-87 (1994). They thus essentially argue that this Due Process claim is also *Heck* barred. Under the *Heck* doctrine, a prisoner may not use a civil rights matter to attack his conviction, sentence, or the outcome of a prison disciplinary proceeding which effects the duration of a prisoner's sentence, nor may he recover monetary damages arising out of alleged violations that would impugn the validity of his conviction, sentence or disciplinary hearing outcome unless and until it is otherwise invalidated. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, "a . . . prisoner's [civil rights] action is barred (absent prior invalidation [of his conviction or disciplinary proceeding]) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal

---

[4] Although the Due Process clause also attaches to deprivations of property, because New Jersey provides alternative forms of post-deprivation process, that Plaintiff's diagram was confiscated does not provide a basis for Due Process protections, as this Court previously explained to Plaintiff in dismissing his property claims. (*See* ECF No. 105 at 12.)

[disciplinary] proceedings) – *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Id.*

As a result of his guilty finding as to the controlled substance charge, Plaintiff was sanctioned with, *inter alia*, the loss of ninety days of commutation time. (*See* 180-12 at 10; 180-10 at 1.) As Plaintiff lost commutation credits, his Due Process and underlying retaliation claims would be barred by *Heck* so long as those credits have the ability to affect the duration of Plaintiff's sentence or parole eligibility. *See, e.g., Cordero v. Emrich*, No. 20-5654, 2024 WL 94998, at *3 (D.N.J. Jan. 9, 2024).

Following his conviction, Plaintiff was sentenced to a life sentence for murder, subject to a 63-year and nine-month parole ineligibility term, a concurrent ten-year term for endangering the welfare of a child, a consecutive 30-year term of imprisonment for kidnapping subject to a 25-year and six-month parole ineligibility term, and two consecutive six-month terms for assault. *See State v. Abdur-Raheem*, A-2077-12T4, 2017 WL 1450629 (App. Div. Apr. 25, 2017), *certif. denied*, 232 N.J. 52 (2018); (*see also* No. 180-5 at 1.) As Plaintiff's mandatory minimum terms for murder and kidnapping cannot be reduced through commutation credits, *see, e.g., State v. Webster*, 383 N.J. Super. 432, 433-36 (App. Div. 2006), and commutation credits cannot otherwise reduce a life term, *see Vaughn v. N.J. Dep't of Corr.*, No. A-2319-19, 2021 WL 5045738, at *1 (N.J. App. Div. Nov. 1, 2021), it appears that Plaintiff's lost commutation credits can have no effect on the practical length of his sentence. Here, Plaintiff is subject to a life sentence that cannot be reduced and a parole eligibility minimum term that also cannot be reduced. It is unclear from the arguments presented and the state of the law whether commutation credits could be earned and lost which would reduce the length of Plaintiff's remaining consecutive sentences. Plaintiff's inmate "Face Sheet," however, lists no earned, lost, or restored commutation credits, and it thus at least appears that the DOC considers Plaintiff ineligible to apply credits in light of his life sentence. (*See* ECF

7

No. 180-5 at 1.) Given these facts, it appears that Plaintiff's credits cannot affect the length of his sentence, and their loss thus does not give rise to a *Heck* bar issue.

Defendants next contend that Plaintiff's retaliation claim, and part of his Due Process claim related to the 2015 hearing—specifically his claim that he was denied evidence related to the charge—were not administratively exhausted and should be dismissed as such. Pursuant to 42 U.S.C. § 1997e, before a prisoner may file a civil rights suit challenging "prison conditions," he is required to exhaust all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). Indeed, a prisoner is required to "exhaust administrative remedies even where the relief sought – [such as] monetary damages – cannot be granted by the administrative process." *Id.*; *See also Booth v. Churner*, 532 U.S. 731, 734 (2001). Where an administrative procedure is available, a plaintiff seeking to challenge prison conditions via a federal civil rights action must fully and properly exhaust his administrative remedies prior to filing suit, and exceptional circumstances will not excuse a plaintiff's failure to exhaust his claims. *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Booth v. Churner*, 206 F.3d 289, 298 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001).

As all of Plaintiff's complaints relate to prison conditions—retaliation for prison complaints and prison due process denials—they are subject to the exhaustion requirement. *Porter*, 534 U.S. at 532. Thus, unless Plaintiff can show that administrative remedies were not available to him, his complaint must be dismissed unless he has properly exhausted all of his administrative remedies related to his claims prior to his filing suit in this matter. *Id.*; *see also Garrett v. Wexford Health*, 938 F.3d 69, 84 (3d Cir. 2019). "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function

effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. To properly exhaust claims, a prisoner must therefore seek all available administrative remedies and at least substantially comply with the applicable administrative rules and regulations imposed by the prison in which the prisoner was detained. *Id.* at 90-103; *Small v. Camden County*, 728 F.3d 265, 272 (3d Cir. 2013) (completion of the administrative review process requires "substantial" compliance with the prison's grievance procedures).

To determine whether a prisoner has properly exhausted his claims, a court must look to the administrative grievance regime of the prison facility in question to determine what steps are required to properly exhaust a claim and determine whether the plaintiff substantially complied with these steps. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). As exhaustion is a threshold issue affecting a plaintiff's entitlement to relief, it is the Court, and not a jury, that determines whether a plaintiff exhausted his claims, and the Court is in turn empowered to resolve any factual disputes related to the exhaustion issue. *Small*, 728 F.3d at 269-71; *see also Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018).

As one court in this District explained in relation to the grievance system in place during the relevant period,

> New Jersey's "Inmate Remedy System is a comprehensive system that includes the opportunity for an inmate to submit an 'Inmate Inquiry Form' or 'Inmate Grievance Form' and, in response to the resulting decision or finding, to submit an 'Administrative Appeal.'" N.J. Admin Code § 10A:1-4.4(c) (2018). Exhaustion of administrative remedies therefore requires that a prisoner both submit an inquiry or grievance form, and an administrative appeal of any adverse decision on the inquiry or grievance form. § 10A:1-4.4(d). These remedy forms "must be complete, legible, and include a clear and concise statement" of the prisoner's claim, and "shall contain the full name, [inmate] number and, when required, signature of the inmate submitting the form." § 10A:1-4.4(e). Upon the filing of an inquiry or grievance form, a prisoner will receive a response within fifteen or thirty days respectively as to the two types of forms, unless the coordinator of

9

> the prison's grievance system determines more time is needed, in which case the prisoner shall be informed of the need for more time. § 10A:1-4.4(i), 4.5(d). Upon receiving a final response to the form, [Plaintiff] may file his administrative appeal, within ten calendar days, at which point he will receive a final decision on his appeal within ten further calendar days. § 10A:1-4.6.

*Campbell v. Doe*, No. 12-2750, 2018 WL 4616068, at *3 (D.N.J. Sept. 26, 2018).

Here, Defendants argue that Plaintiff neither exhausted his retaliation claims nor the portion of his Due Process claim regarding the denial of evidence related to his drug possession charge. Defendants note that Plaintiff filed no grievance related to the alleged retaliation, and failed to raise the denial of evidence issue through a grievance or during his administrative appeal, which the Appellate Division also noted in disposing of Plaintiff's appeal of his disciplinary charges beyond the administrative level. (*See* ECF No. 180-3 at 3; ECF No. 180-10 at 3-4.) A review of Plaintiff's grievance filings during the relevant period confirms that the retaliation claim was never raised in a proper grievance and is thus unexhausted. As Plaintiff neither filed a grievance related to any of his retaliation claims, nor raised the denial of evidence issue during administrative appeals, Plaintiff's First Amendment retaliation claims and the portion of his Due Process claim related to the CDS charge regarding the late receipt of lab reports must be dismissed as they were not properly exhausted.

The remainder of Plaintiff's Due Process claim related to the drug charge, however, appears to have been exhausted during his appeal of the disciplinary proceedings, and thus remains live at this time. As Defendants do not present further argument as to why they are entitled to judgment on that Due Process claim,[5] this Court will not address that claim further at this time.

---

[5] In relation to Plaintiff's retaliation claim, which this Court dismisses for lack of exhaustion, Defendants do argue that this claim should fail because there is "some evidence" in the record supporting his disciplinary infraction. Even assuming the 8th Circuit case on which they base this argument applies to Plaintiff's retaliation claim, *see Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994), the question of whether there was evidence of wrongdoing is largely irrelevant to

To the extent Defendants inadvertently failed to move as to the Due Process claim concerning the 2015 disciplinary proceedings, they may do so through a second motion for summary judgment filed within thirty days of the date of this Court's accompanying order.

### C.     Plaintiff's Eighth Amendment Conditions Claim

Defendants next argue that they are entitled to judgment as to Plaintiff's claim that the prison's "ping pong" toilet system amounts to a denial of his Eighth Amendment rights. While the Eighth Amendment prohibits the use of cruel and unusual punishment against prisoners, it "does not mandate comfortable prisons," and "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted, quoting *Rhodes v. Chapman*, 452 U.S 337 (1981)); *see also Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 79 (3d Cir. 2014). An Eighth Amendment conditions of confinement claim thus has two elements: the plaintiff must first show that the conditions under which he was housed are objectively sufficiently serious that defendants denied him the minimal civilized measure of life's necessities, and then show that each defendant subjectively had a sufficiently culpable state of mind insomuch as they acted with deliberate indifference to the challenged conditions. *Wilson*, 501 U.S. at 298-303; *Watson*, 567 F. App'x at 79; *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at *3 (D.N.J. Oct. 2, 2012).

---

Plaintiff's Due Process claim. That claim rises and falls with what *process* was provided to Plaintiff, not the outcome of or conclusions regarding the disciplinary charges in question. *See, e.g., Wolff*, 418 U.S. at 556-57. Likewise, although Defendants argue qualified immunity, they present no arguments as to this Due Process claim, and thus provide no basis for a finding of immunity in their current brief. Finally, while Defendants also raise arguments as to the availability of damages for emotional suffering as to Plaintiff's claims, those arguments would in no way bar the award of at least nominal damages on a Due Process claim, and thus serve at best to limit damages and do not provide a basis for the dismissal of this Due Process claim. *See, e.g.*, 42 U.S.C. § 1997e(4)(e) (limiting recovery for emotional injury in a civil rights claim where physical injury or sexual assault is not shown).

Here, Plaintiff's claims arise from the toilet system used in the prison, and Plaintiff essentially contends that being forced to deal with the sight and smell of waste that backed up into his toilet from neighboring cells amounted to cruel and unusual punishment. A panel of the Third Circuit dealt with a similar claim in *Ridgeway v. Guyton*, 663 F. App'x 203, 205-06 (3d Cir. 2016). In that case, the plaintiff alleged that his toilet had overflowed on one specific date, and suggested that the toilet would overflow into his cell from time to time because of plumbing issues. *Id.* The Third Circuit found that because Plaintiff:

> did not at any point allege that the overflowing was continuous or, in any event, make allegations sufficient to plausibly suggest that he was forced to "live in squalor[," *see*] *McBride v. Deer*, 240 F.3d 1287, 1290-91 (10th Cir. 2001)[, and] did not raise any health concerns or health problems arising from the broken toilet[, his claim] fell far short of those that courts have held to satisfy the requirement of an objectively, sufficiently serious injury,

notwithstanding the admittedly unpleasant nature of an occasionally leaky toilet. *Ridgeway*, 663 F. App'x at 205-06. The facts underlying Plaintiff's claim, as he described the claim in his deposition, were quite similar to those in *Ridgeway*. Plaintiff alleged that waste from a neighboring cell would occasionally flow into the bowl of his toilet, without overflowing, and could suggest no injury he suffered as a result other than the unpleasant odor or sight he may have had to endure while flushing the toilet. Plaintiff's claim thus fails to permit the conclusion that he suffered an objectively, sufficiently serious injury, and this Court thus finds that judgment must be entered in favor of Defendants as to this claim.

D.   **Plaintiff's State Law Claims**

Defendants finally move to dismiss Plaintiff's pendent state law claims for negligence, gross negligence, and intentional infliction of emotional distress on the ground that Plaintiff never filed a notice of claim as required by the New Jersey Tort Claims Act. The New Jersey Tort Claims Act serves as a limited waiver of sovereign immunity by the State of New Jersey and controls the

liability of New Jersey's public entities and their employees, including the New Jersey Department of Corrections, its prisons, and employees. *See, e.g., Gaston v. New Jersey*, 298 F. App'x 165, 167-68 (3d Cir. 2008); *N.J. Stat. Ann.* § 59:8-1, *et seq.* Under the NJTCA, a plaintiff seeking to "maintain an action against a public entity or public employee . . . must file a notice of claim with either the State Attorney General or with 'the department or agency involved in the wrongful act or omission . . . within 90 days of the accrual of the cause of action." *Gaston*, 298 F. App'x at 167-68 (quoting *N.J. Stat. Ann.* § 59:8-7). Failure to file a timely notice of claim mandates the dismissal of a plaintiff's state law tort claims. *Id.* at 168.

Here, all of Plaintiff's state law claims are brought against employees of the New Jersey Department of Corrections, and concern responses to prisoner complaints Plaintiff made in 2014 and 2015. Defendants contend that Plaintiff never filed a notice of claim, and certainly did not file one within ninety days of his claims accruing. (*See* ECF No. 180-3 at 2-3.) In support, Defendants submitted copies of discovery requests in which Plaintiff was requested to provide any copies of notices of claims Plaintiff filed, and Plaintiff's responses in which he failed to provide any copies of notices of claim, (*see* ECF No. 180-7). Defendants also submitted certifications from state officials representing both the NJDOC and the state Treasury Department's office, which is tasked with maintaining records of all tort claim notices which certify that neither office has a copy of any notice of claim as to Plaintiff's state law tort claims in this matter. As the record provided by Defendants indicates that Plaintiff never filed a notice of tort claim as required by the NJTCA, and as Plaintiff has provided no evidence to rebut that evidence or to suggest he did file a notice, this Court must conclude that Plaintiff failed to comply with the notice requirements of the NJTCA, and must dismiss Plaintiff's state law tort claims as a result. *Gaston*, 298 F. App'x at 167-68; *see also Velez v. City of Jersey City*, 180 N.J. 284, 292-96 (N.J. 2004) (NJTCA notice requirement applies to all tort claims, including both negligence and intentional infliction of emotional distress).

Plaintiff, for his part, appears not to dispute that he did not file a timely notice of tort claim. Plaintiff argues instead, without any case law in support, that his failure should bar only official capacity claims, and his state law claims should be permitted to proceed against Defendants in their individual capacities. The New Jersey Tort Claims Act, however, makes no such distinction. *See, e.g., Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 490, 490 n.19 (D.N.J. 2006) (notice requirement applies to both official and individual capacity suits against public employees); *see also Velez v. City of Jersey City*, 180 N.J. 284, 289-96 (2004). As the notice requirement applies even to Plaintiff's individual capacity suits under state law, and as Plaintiff effectively concedes that he did not file a proper notice of claim, Plaintiff's state law claims against Defendants, all of whom are public employees, must be dismissed and judgment must be entered as to those claims in favor of Defendants.

### E. The Unserved and Fictitious Defendants

In addition to the moving Defendants in this matter, Plaintiff named in his amended complaint a number of other Defendants who were either fictitious and were never substituted for a real party, or who were properly named but were never served in this matter, despite the nearly six years that have passed since this Court partially denied the moving Defendants' motion to dismiss the amended complaint. Pursuant to Rule 4 of the Federal Rules of Civil Procedure, a plaintiff is required to serve his complaint upon all named defendants within 90 days, and a court may, on motion of a defendant or on its own after notice to the plaintiff, dismiss claims against any unserved defendants. *See Tyler v. Cruz*, No. 15-2951, 2019 WL 1149780, at *8 (D.N.J. Mar. 13, 2019); *see also Manuel v. Atkins*, 545 F. App'x 91, 95 (3d Cir. 2013). Likewise, this Court may dismiss claims against any defendant which a plaintiff fails to timely prosecute. *See* Fed. R. Civ. P. 41; *see also Rogers v. N.J. Dept' of Corr.*, No. 21-2891, 2022 WL 4533848, at *5-6 (3d Cir. Sept. 28, 2022). As such, Plaintiff is directed to show cause within thirty days as to why his

14

claims against the unserved Defendants should not be dismissed for either failure to timely effect service or failure to prosecute. Failure by Plaintiff to timely respond to this Court's notice within thirty days of the accompanying order shall result in Plaintiff's claims against the unserved Defendants being dismissed. Finally, because Plaintiff did not substitute the fictitious Defendants for named parties prior to the end of discovery, his claims against the fictitious Defendants must be dismissed at this time. *See Baker v. U.S. Marshal Serv.*, No. 12-494, 2015 WL 377042, at *5 (D.N.J. Jan. 28, 2015).

### IV.    CONCLUSION

In conclusion, the moving Defendants' Motion for Summary Judgment (ECF No. 180) is **GRANTED IN PART** and **DENIED IN PART**. Judgment shall be entered in favor of the moving Defendants on all of Plaintiff's claims other than his Due Process claims related to the 2015 drug-possession disciplinary hearing. Plaintiff is directed to show cause within thirty days as to why his claims against the unserved Defendants should not be dismissed, and the fictitious party Defendants are **DISMISSED** from this matter. An appropriate order follows.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE